

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 7, 1997

The Honorable Richard J. Miller
Bell County Attorney
P.O. Box 1127
Belton, Texas 76513

Opinion No. DM-439

Re: Whether a juvenile court's authority under Family Code section 51.12(b) to "control the conditions and terms of detention and detention supervision" super-sedes the terms of a county contract with a private corporation regarding the operation of the county juvenile detention facility (RQ-921)

Dear Mr. Miller:

On behalf of Bell County (the "county"), you ask about the relationship between Family Code, section 51.12(b) — which gives the juvenile court of a county the authority to "control the conditions and terms of detention and detention supervision" — and a county contract authorizing a private corporation to operate the county juvenile detention facility. We conclude that section 51.12(b) is intended to authorize the juvenile court to control the conditions of the county juvenile facility and that any contract entered into by the county for the operation of a county juvenile facility is void to the extent it is inconsistent with section 51.12(b).

Section 51.12 of the Family Code provides in pertinent part as follows:

(b) The proper authorities in each county shall provide a suitable place of detention for children who are parties to proceedings under this title, but the *juvenile court shall control the conditions and terms of detention and detention supervision* and shall permit visitation with the child at all reasonable times;

(c) In each county, *the judge of the juvenile court and the members of the juvenile board shall personally inspect the detention facilities* and any public or private secure correctional facilities used for post-adjudication confinement that are located in the county and operated under the authority of the juvenile board at least annually *and shall certify* in writing to the authorities responsible for operating and giving financial support to the facilities and to

the Texas Juvenile Probation Commission that they are suitable or unsuitable for the detention of children in accordance with:

(1) the requirements of Subsections (a), (f) and (g); and

(2) minimum professional standards for the detention of children in pre-adjudication or post-adjudication secure confinement promulgated by the Texas Juvenile Probation Commission or, at the election of the juvenile board, the current standards promulgated by the American Correctional Association.

(d) No child shall be placed in a facility that has not been certified under Subsection (c) of this section as suitable for the detention of children. . . .

In addition, we note that section 141.042(a)(4) of the Human Resources Code requires the Texas Juvenile Probation Commission to adopt reasonable rules that provide minimum standards for juvenile detention facilities.

The Bell County Juvenile Board (the "juvenile board" ) is governed by section 152.0201 of the Human Resources Code and is composed of the county judge, the district judges of the county, the judge of County Court at Law No. 1 and the judge of County Court at Law No. 2. You inform us that the juvenile board has designated the County Court at Law No. 1 as the juvenile court for the county. *See* Fam. Code § 51.04(b) ("In each county, the county's juvenile board shall designate one or more district, criminal district, domestic relations, juvenile, or county courts or county courts at law as the juvenile court . . . .").

You refer to the contract at issue as a "management agreement."[1] You state that the management agreement authorizes the private corporation to operate, maintain and manage the juvenile detention facility according to standards of the Texas Juvenile Probation Commission, subject to the approval of the juvenile board. "The corporation is to develop its own written policies, procedures, and operation manuals concerning operation of the facility 'and juvenile supervision for

---

[1]You state that the management agreement was signed by the county judge "on behalf of the Commissioners Court as well as on behalf of the Juvenile Board." This office has opined that a commissioners court is authorized to enter into a contract with a private entity to operate a county juvenile detention facility under the statutory predecessor to Human Resources Code section 62.001(a). *See* Attorney General Opinion M-843 (1971) at 4; *see also* Letter Opinion No. 94-088 (1994) at 2-3 (noting that this office has already determined that county may contract with private entity to operate county's detention home) (citing other prior attorney general opinions). We note, however, that Human Resources Code, section 142.002(a), upon which you appear to rely, merely authorizes a "juvenile board . . . with the advice and consent of the commissioners court, [to] employ" personnel necessary to provide "juvenile probation services." Although the term "juvenile probation services" includes "services provided by a juvenile probation department that is related to the operation of a juvenile detention facility," Hum. Res. Code § 142.001(2), section 142.002(a) does not, on its face, authorize a juvenile board to contract with a private corporation to operate a juvenile detention facility. As you note, Human Resources Code section 152.0007, which requires a juvenile board to "employ personnel to conduct probation services" and to "operate or supervise juvenile services in the county," does not apply to the Bell County Juvenile Board. *See id.* § 152.0201(d).

which it is responsible' under the agreement, which policies must comply with legal requirements." The private corporation is responsible for "day-to-day management of the facility, staffing, employee training, program services for juvenile detainees (with the advi[c]e and consent of the Juvenile Board), and providing security and supervision of the juveniles." You also state that "[t]he only role spelled out in the Management Agreement for the designated Juvenile Court is one of inspection." Given this background, you ask the following series of questions:

> [W]hat is the specific authority of the designated Juvenile Court . . .? If the required policies of the private corporation are adopted by the Juvenile Board, is the Juvenile Court empowered by Section 51.12(b) to order different activities or policies independent of those adopted by the Juvenile Board, so long as minimum standards are met? Does the Juvenile Court have the statutory authority to specifically direct all aspects of the day-to-day operation of the detention facility within the standards established by the Juvenile Probation Commission, regardless of any agreement between a private corporation and the Juvenile Board and Commissioners Court? How does [section 51.12(b)] co-exist with other statutes . . . [given that it seems] the legislature intended that the Juvenile Board play the primary role in operating and supervising detention facilities?

Your query requires us to construe the language in section 51.12(b) that gives the juvenile court of a county the authority to "control the conditions and terms of detention and detention supervision." With your query, you enclose a letter brief written on behalf of the county by a private attorney expressing the view that this language in section 51.12(b) merely authorizes the juvenile court to control the terms and conditions of detention of the particular juveniles coming before the court, but that it gives the juvenile court no general supervisory authority over the juvenile detention facility: "[T]he extent of the Juvenile Court's authority is limited to those juveniles directly under the Court's jurisdiction, and only then to the extent necessary to insure that the facility to which these specific juveniles are entrusted is operated in accordance with law." A letter from the Texas Juvenile Probation Commission, however, rejects this narrow interpretation of the language and insists that section 51.12(b) gives juvenile courts control over the conditions and terms of detention and that to exercise this authority juvenile courts "must have some ability to influence operations of the facility."

We believe that the Texas Juvenile Probation Commission has the better of the two positions. The relevant language in section 51.12 was enacted in 1973 when the legislature adopted title 3 of the Family Code.[2] As the following commentary explains, when title 3 was adopted, juveniles were often detained in county jails controlled by the county sheriff. When understood in this context, it is apparent that the intent of language at issue was to transfer supervisory authority for the detention

---

[2]*See* Act of May 25, 1973, 63d Leg., R.S., ch. 544, § 1, 1973 Tex. Gen. Laws 1460, 1465-66.

of juveniles from the sheriff, the official responsible for supervising and controlling county jails, to the juvenile court:

> Subsection (b), like prior Texas law, *Tex. Rev. Civ. Stat. Ann.* art. 2338-1, § 17, places the responsibility on local authorities to provide the space needed for the detention of children. The proper authorities in each county clearly includes the commissioners court; however, if the detention facility is in the county jail the proper authorities would also include the sheriff. The juvenile court control of "the conditions and terms of detention and detention supervision" is new to Texas law. The concept, however, is an old principle in juvenile proceedings: The juvenile court judge is the ultimate authority for the entire juvenile process and he, not the sheriff, should control the conditions of detention and detention supervision. Subsection (b), therefore, supersedes the general rule of *Tex. Rev. Civ. Stat. Ann.* art. 5116 that "the Sheriff shall exercise a supervision and control over the jail," to the extent that a county jail is used as a place of detention for children. . . .

Robert O. Dawson, *Delinquent Children and Children in Need of Supervision: Draftman's Comments to Title 3 of the Texas Family Code,* 5 TEX. TECH. L. REV. 509, 530-31 (1974).

In enacting the language at issue in 1973, the legislature clearly intended to vest juvenile courts with authority over county facilities used to detain juveniles. It is now the case that juveniles across the state are housed in juvenile detention facilities rather than county jails.[3] As the same commentator wrote in 1990, "When Title 3 was enacted in 1973, many children in pretrial detention status were detained in county jails. Today, no children are detained in county jails but are instead detained in local or regional detention facilities. That makes some of the provisions of subsection (b) relating to county jails obsolete." Dawson, *supra* note 3, at 1776. While the original impetus for this language in section 51.12(b) may no longer exist, we have no basis to conclude that the language has been impliedly repealed.

First, we note that although the above-quoted commentary suggests that the sole purpose of the language regarding juvenile court control of "the conditions and terms of detention and detention supervision" was to give juvenile courts authority over the conditions of the detention of juveniles in county jails, section 51.12(b) vests juvenile courts with this authority without regard to whether a particular facility is operated by the sheriff or the commissioners court. This suggests legislative intent to vest juvenile courts with authority over the conditions of detention in all county facilities used to detain juveniles. The legislature last revisited section 51.12 in 1995, amending subsections (a) and (c), but did not see fit to amend subsection (b).[4]

---

[3] Robert O. Dawson, *Title 3. Delinquent Children and Children in Need of Supervision,* 21 TEX. TECH. L. REV. 1747, 1776 (1990).

[4] *See* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 12, 1995 Tex. Gen. Laws 2517, 2523.

We also note that the authority granted to the juvenile court in subsection (b) is not inconsistent with the requirement in subsection (c) that "the judge of the juvenile court and the members of the juvenile board shall personally inspect the detention facilities" and certify their suitability for the detention of children. The duty of the juvenile court and the juvenile board annually to inspect and certify to a facility's compliance with statutory requirements and minimum standards selected by the juvenile board does not preclude the juvenile court from exercising authority over conditions and terms of juvenile detention 365 days of the year. Furthermore, the express inclusion of the judge of juvenile court in inspection in subsection (c), which dates from 1975,[5] indicates that the legislature intended to ensure that the juvenile court judge participate in the inspection of juvenile detention facilities even if the judge is not a member of the juvenile board.[6] In the many times the legislature has amended subsection (c) since 1975, it has left this express and separate reference to the juvenile court unaltered.[7]

Finally, we note that since 1973 the role of juvenile boards in the administration of the county-level juvenile justice system has been significantly expanded across the state.[8] In addition, today, as a general rule, the juvenile court judge must be a member of the juvenile board.[9] It may be.the case that the legislature has failed to amend subsection (b) to delete the juvenile court's separate statutory authority to control the county juvenile detention facility because it views this authority as fully consistent with the juvenile court's role as a member of the juvenile board. While the separate statutory grants of authority with respect to juvenile detention facilities in Family Code section 51.12,

---

[5]*See* Act of May 19, 1975, 64th Leg., R.S., ch. 693, § 10, 1975 Tex. Gen. Laws 2152, 2155. As originally enacted in 1973, this provision delegated the duty of inspection to "the juvenile board, or if there is none, the judge of the juvenile court." Act of May 25, 1973, 63d Leg., R.S., ch. 544, § 1, 1973 Tex. Gen. Laws 1460, 1466.

[6]*See* Robert O. Dawson, *Title 3. Delinquent Children and Children in Need of Supervision*, 8 TEX. TECH. L. REV. 119, 134 (1976) ("Subsection 51.12(c) was amended at the recommendation of the Family Law Council to provide that the judge of the juvenile court should be included among those persons who have responsibility to inspect the detention facilities and certify their adequacy. In some counties of the state, for some reason, the judge of the juvenile court appears not to be a member of the juvenile board. It is important to include the juvenile court judge as a member of the inspection team as he is the judicial official who would normally have the most detailed knowledge of the condition and problems in the detention facility.").

[7]*See* Act of May 20, 1985, 69th Leg., R.S., ch. 293, § 1, 1985 Tex. Gen. Laws 1345, 1345-46; Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 31, 1987 Tex. Gen. Laws 707, 1303; Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 12, 1995 Tex. Gen. Laws 2517, 2523.

[8]*See* Act of May 3, 1983, 68th Leg., R.S., ch. 59, §§ 1-8, 1983 Tex. Gen. Laws 289, 289-92 (establishing juvenile board in each county where none exists).

[9]*See* Hum. Res. Code ch. 152, subch. B, § 152.0032 (including judge of any statutory court designated as a juvenile court on juvenile board) (pursuant to Hum. Res. Code § 152.0031, this provision does not apply to counties served by juvenile board created under Hum. Res. Code ch. 152, subchs. C or D); *see also id.* ch. 152 subch. C, § 152.0051 (composition of juvenile board in county with family district court), D (provisions establishing and specifying composition of juvenile boards in specific counties).

subsections (b) and (c) (and other statutes[10]) may be "unwieldy and unmanageable" in Bell County, it is for the legislature, not this office, to assess whether the authority granted to juvenile courts in subsection (b) is outdated or universally unworkable and to amend the statute if necessary.

In sum, section 51.12(b) vests the juvenile court with authority over the county juvenile detention facility separate and apart from the authority of the juvenile board and commissioners court. A county is not authorized to enter into a contract that conflicts with state law. A county contract with a private corporation regarding the operation of a juvenile detention facility is void to the extent it conflicts with section 51.12(b).[11]

## S U M M A R Y

Family Code section 51.12(b) vests a county juvenile court with authority over county juvenile detention facilities separate and apart from the authority of the juvenile board and commissioners court. A county contract with a private corporation regarding the operation of a juvenile detention facility is void to the extent it conflicts with section 51.12(b).

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General

---

[10]See, e.g., Hum. Res. Code chs. 62 (authorizing counties to establish detention homes for juveniles), 142, 152 (statutes governing juvenile boards). As noted above, some of these provisions do not apply to the Bell County Juvenile Board, see Hum. Res. Code § 152.0201(d); see also supra note 1. We do not specifically address their relationship to Family Code section 51.12(b).

[11]We have not been provided with a copy of the management agreement at issue and accept the your characterizations of it as true. This office generally refrains from construing contracts in attorney general opinions. See, e.g., Attorney General Opinions DM-383 (1996) at 2 (interpretation of contract not appropriate function for opinion process), DM-192 (1992) at 10 ("This office, in the exercise of its authority to issue legal opinions, does not construe contracts."), JM-697 (1987) at 6 ("review of contracts is not an appropriate function for the opinion process"). Therefore, even if you had provided us with a copy, we would not be able to definitively resolve whether the management agreement conflicts with section 51.12(b) in whole or in part.